DeAnne Casperson, Esq. (ISB No. 6698)
dcasperson@workandwage.com
Amanda E. Ulrich, Esq. (ISB No. 7986)
aulrich@workandwage.com
Shawnee Perdue (ISB No. 8888)
sperdue@workandwage.com
CASPERSON ULRICH DUSTIN PLLC
356 W. Sunnyside Road, Suite B
Idaho Falls, Idaho 83402
Telephone: (208) 524-0566
Facsimile: (208) 745-2523

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JONAH LLOYD,<br><br>          Plaintiff,<br><br>v.<br><br>ACADEMY INC. (THE) dba THE ACADEMY PUBLIC CHARTER SCHOOLS, a political subdivision of the State of Idaho; and JAMIE AUBREY, in her official and individual capacities,<br><br>          Defendants. | Case No. _____<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>Filing Fee: $402.00 |

COMES NOW Plaintiff Jonah Lloyd ("Plaintiff" or "Lloyd"), by and through his counsel of record, Casperson Ulrich Dustin PLLC as a cause of action against Academy Inc. (The) dba The Academy Public Charter Schools, a political subdivision of the State of Idaho, and Jamie Aubrey, in her official and individual capacities, and alleges as follows:

## JURISDICTION AND VENUE

1.  This is an action brought under Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681, 42 U.S.C. § 1983, the Idaho Human Rights Act, Idaho Code § 67-5901 *et*

*seq.,* the Idaho Protection of Public Employees Act § 6-201 *et seq.*, and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*

2.    This Court has jurisdiction pursuant to 28 U.S.C §§ 1331, 1343 and 1367.

3.    Venue in this action properly lies in the United States District Court for the District of Idaho, Eastern Division, pursuant to 28 U.S.C § 1391(b) because the claims arose in this judicial district.

## PARTIES

4.    Plaintiff is a citizen and resident of the United States of America, who at all times relevant to this Complaint has resided in Bannock County, Idaho.

5.    Defendant Academy Inc. (The) dba The Academy Public Charter Schools ("Academy") is a political subdivision of the State of Idaho with its principal place of business in Bannock County, Idaho.

6.    Defendant Jamie Aubrey ("Aubrey") is, and was at all times relevant to this Complaint, an administrator for Academy and vice principal of the school where Lloyd was employed as a teacher.

7.    At all times relevant to this Complaint, Academy regularly employed fifteen or more persons whose services were performed in the State of Idaho and engages in an industry affecting commerce. Consequently, Academy's conduct is properly regulated by 42 U.S.C. §12101, *et seq.*

8.    At all times relevant to this complaint, Academy was a recipient of federal funding, subjecting it to the requirements of Title IX.

## FACTS COMMON TO ALL COUNTS

9.    Plaintiff realleges and incorporates by reference paragraphs 1 through 8 as though fully set

forth herein.

10.    Plaintiff worked for Academy as a teacher for over 11 years. At all relevant time periods, Plaintiff's employment as a teacher was excellent.

11.    During the 2023-2024 school year, and prior to February 6, 2024, an eighth-grade student, referred to hereinafter as John Doe or "JD," allegedly sexually assaulted and harassed female classmates on the bus ride from school. Through a cooperative agreement, students ride public transportation to and from the school from a designated location.  JD's conduct occurred on the ride from school on the public transportation bus.

12.    Some of JD's alleged conduct included groping female classmates' genitals and JD pointing to his groin area and asking a female student "what are you going to do about this boner?" Initially, the students were afraid to report the conduct.

13.    The morning after the bus incident with JD, the female students subjected to JD's behavior reported the incident to Mrs. Jenkins, a teacher at Academy.

14.    On or about Tuesday, February 6, 2024, Plaintiff was informed of the reported sexual misconduct by eighth-grade teacher Mr. Blackburn.

15.    Plaintiff was aware that JD had been accused of similar conduct in the past and was concerned administration would take no action because of his family status in the community and school.

16.    On or about February 6th or February 7th, 2024, Plaintiff met with Vice-Principal Aubrey in the hallway and asked her for an update on the incident.  Aubrey informed Claimant that "it happened on city property, so was not the school's jurisdiction," and "JD did not molest any girls."

17.    Aubrey failed to report the incident or initiate any form of Title IX investigation, as she was

obligated to do. Nor did she report the incident to CPS.

18.    On Thursday, February 8, 2024, Plaintiff was called into Mr. Blackburn's 8th grade classroom along with Mrs. Jenkins. Mrs. Jenkins informed Plaintiff and Mr. Blackburn that she was very uncomfortable having JD in her classroom. She also stated that one of the alleged victims, a female 7th grade student, confided in her that she was very uncomfortable being around JD and was worried about telling her parents what he did to her. Mrs. Jenkins indicated the student was clearly distraught by JD's sexual misconduct toward her. Plaintiff, Mr. Blackburn, and Mrs. Jenkins all agreed that JD should not be around other students, particularly the alleged victims, until this matter was investigated and resolved.

19.    After his conversation with Mrs. Jenkins and Mr. Blackburn, Plaintiff felt he needed to act, considering that Academy proudly asserts it is "a safe place for learning." The principal/superintendent was absent at the time so he could not elevate the matter, and Aubrey had refused to take any action. Further, Plaintiff was on his preparation hour and had no teaching responsibilities at the time.

20.    Academy had no Title IX policy to follow or Title IX Coordinator to whom a report could be made. However, Plaintiff knew that any instances of abuse were to be reported within a very short period of time.

21.    Plaintiff went to the classroom where JD was doing some catch-up work during lunch and quietly asked him to gather his things and come with him.  He and JD walked to the school office.

22.    When Plaintiff and JD arrived at the office, Plaintiff informed the front office staff that JD should not be permitted to return to the classroom for the remainder of the day.

23.    Aubrey then entered the office and in a coddling voice toward JD asked, "What did he do?"

Plaintiff was shocked and replied, "You know what he did, Jamie." Aubrey did not respond, ducked into another office, and Plaintiff returned to his classroom.

24.    A few minutes later Aubrey came to Plaintiff's classroom and stood in his classroom doorway. As they began the conversation, Plaintiff stated, "You told me JD didn't molest any girls." Aubrey denied having stated that to Plaintiff.  Plaintiff understood Aubrey told another teacher she did not believe the girls. In arguing with Plaintiff, Aubrey falsely stated that she did not know a certain girls was involved. Initially, Plaintiff remained at the front of his classroom, but later moved closer to the door.  After Plaintiff repeatedly asked Aubrey to leave, Plaintiff moved back to his desk at the front of the door.

25.    Aubrey admitted to Plaintiff the administration had not informed the parents of the involved students about the incident or reported the abuse.

26.    Plaintiff expressed concern for the safety of the students. Aubrey repeatedly insisted that Plaintiff was "not in [his] right mind," and suggested he go home. Plaintiff repeatedly asked Aubrey to go back to her office and do her job. He told her he did not want to say something he would regret later. She continued to argue with Plaintiff in spite of Plaintiff's efforts to end the conversation.

27.    Plaintiff was offended that Aubrey would suggest that he was "not in his right mind" because he was following his professional, ethical, and legal duties in protecting reporting victims.

28.    Plaintiff had previously confided in Principal Lovstedt regarding a depression diagnosis, which at times causes Plaintiff problems in spite of treatment.

29.    Based on information and belief, Aubrey knew of Plaintiff's issues with a disability and was using that knowledge against him to excuse her own conduct when Plaintiff took action to report and protect students.

30. A third-party witness to the exchange between Plaintiff and Aubrey confirmed that Plaintiff attempted to de-escalate the conversation or end it several times, and Aubrey refused and continued to argue with him.

31. Aubrey attempted to obtain confirmation from the third-party witness that Plaintiff's behavior was inappropriate, but the third-party witness confirmed that he agreed with Plaintiff.  The third-party witness also confirmed that the argument never escalated to being out of control. Academy ignored the observations of this unbiased, third-party witness.

32. On February 9, 2024, Academy initiated and completed an investigation into only Plaintiff's actions and referred their findings to the School Board for discipline as a result of Plaintiff expressing his concerns over Aubrey's failure to address the student-on-student sexual misconduct or abuse reported and as a result of Plaintiff attempting to remedy Academy's failure to properly address the issue.

33. On February 23, 2024, Plaintiff's employment was terminated. Based on information and belief, Aubrey's failure to act in protecting these student victims has never been investigated or addressed by Academy.

34. Defendants terminated Plaintiff in violation of the IPPEA, Title IX, the Idaho Human Rights Act, the American with Disabilities Act, and 42 U.S.C. § 1983.

35. Fellow teachers submitted written statements in support of Plaintiff and the female students, which were ignored by Academy.

36. Another teacher notified CPS and the police about the incident because Academy had not done so.

37. On or about April 17, 2024, Plaintiff dually filed a Charge of Discrimination with the EEOC and Idaho Human Rights Commission against Academy.  Plaintiff received a Notice of Right

to Sue letter on or about April 19, 2024. Plaintiff has exhausted his administrative remedies.

## COUNT I
## RETALIATION IN VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972, 20 U.S.C. §1681(a)

38. Plaintiff incorporates herein by reference all the foregoing and following allegations of the Complaint.

39. Academy receives federal funding and is subject to Title IX of the Education of Amendments of 1972, 20 U.S.C. § 1681(a).

40. Title IX prohibits retaliation against students and employees who report sexual harassment or engage in protected activity.

41. As stated, Plaintiff reported the student-on-student sexual assault and sexual harassment to the Vice Principal, Aubrey.

42. Plaintiff additionally followed up on the report after Aubrey refused to take any action or initiate any investigation as she is legally required to do so.

43. Plaintiff asked the accused student to follow him to the front office to again report the situation to Aubrey, after learning the female students felt unsafe being around him.

44. Plaintiff again confronted Aubrey for her failure to take any legally required action.

45. Fellow teachers and staff were concerned about Aubrey's lack of action and supported Plaintiff's report and removal of the accused student from the classroom in order to protect the reporting students.

46. As a result, Aubrey and the principal placed Plaintiff under an "investigation" that lasted a single day, excluded any investigation into Aubrey's failure to take action, and subsequently terminated Plaintiff's employment after working there for over 11 years.

47. Plaintiff engaged in protected activity by reporting and addressing the student-on-student sexual assault so the matter could appropriately be investigated and addressed.

48. Academy failed to conduct any investigation or follow any Title IX requirements in responding to the allegations of student-on-student sexual harassment and sexual assault. In fact, Academy has taken no action to comply with Title IX, including having a policy, training teachers and staff on appropriate actions, and appointing a Title IX Coordinator.

49. Academy wrongfully retaliated against Plaintiff for engaging in protected activity in violation of Title IX, placing Plaintiff under investigation and terminating Plaintiff for engaging in protected activity.

50. As a direct and proximate result of Academy's actions, Plaintiff has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.

51. Plaintiff has also suffered non-economic damages including emotional distress damages. Plaintiff is therefore entitled to general and compensatory damages, in an amount to be proven at trial, as well as any equitable remedies available to him.

52. Academy committed the acts alleged, or failed to act as reasonably required, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff from an improper motive amounting to malice, and in conscious disregard of Plaintiff's rights. Plaintiff may thus recover punitive damages from Defendant in amounts to be proven at trial.

## <u>COUNT II</u>
## RETALIATION IN VIOLATION OF IDAHO HUMAN RIGHTS ACT

53. Plaintiff incorporates herein by reference all the foregoing and following allegations of the Complaint.

54. The Idaho Human Rights Act prohibits retaliation against employees who report sexual harassment or engage in protected activity related to student's right to participate in education.

55. As stated, Plaintiff's reported the student-on-student sexual assault and sexual harassment to

the Vice Principal, Aubrey, on multiple occasions, including taking action to protect the alleged victims who were distraught in attending classes with JD.

56. Instead of addressing the problem, Aubrey stood in Plaintiff's classroom door, arguing with him about the situation.

57. In order to hide her own failures to act, Aubrey misrepresented the conversation and situation, accusing Plaintiff of misconduct, which was contradicted by a third-party witness.

58. Defendants retaliated against Plaintiff for his protected activity by falsely accusing him of misconduct and terminating his employment.

59. As a direct and proximate result of Defendants' actions, Plaintiff has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.

60. Plaintiff has also suffered non-economic damages including emotional distress damages. Plaintiff is therefore entitled to general and compensatory damages, in an amount to be proven at trial, as well as any equitable remedies available to him.

61. Defendants committed the acts alleged, or failed to act as reasonably required, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff from an improper  motive amounting to malice, and in conscious disregard of Plaintiff's rights. Plaintiff may thus recover punitive damages from Defendants in amounts to be proven at trial.

### COUNT III
### VIOLATION OF THE PROTECTION OF PUBLIC EMPLOYEES ACT
### IDAHO CODE § 6-2104

62. Plaintiff incorporates herein by reference all the foregoing and following allegations of the Complaint.

63. Plaintiff communicated in good faith the existence of a violation or suspected violation of

law, rule regulation adopted by the state of Idaho and/or the United States.

64.  The communication was made at a time and in a manner that gave Defendant reasonable opportunity to correct the violation.

65.  Defendant took adverse action against Plaintiff because of his good faith report of a violation of law.

66.  As a direct and proximate result of the Defendant's actions, Plaintiff has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.

67.  Plaintiff has also suffered non-economic damages including emotional distress damages. Plaintiff is therefore entitled to general and compensatory damages, in an amount to be proven at trial, as well as any equitable remedies available to him.

<u>COUNT IV</u>
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AMENDMENTS ACT/IDAHO HUMAN RIGHTS ACT**
**(Disability Discrimination)**

68.  Plaintiff incorporates herein by reference all the foregoing and following allegations of the Complaint.

69.  Plaintiff has an actual disability, was perceived as being disabled, and has a record of a disability, all of which is defined by the ADAAA.

70.  Plaintiff's actual disability substantially limits his major life activities.

71.  Plaintiff confided in Principal Lovstedt that he struggled with a disability. Based on information and belief, Lovstedt informed Aubrey about Plaintiff's disability.

72.  Lovstedt participated in the decision to investigate, discipline, and/or terminate Plaintiff's employment.

73.  Academy took adverse employment action against Plaintiff when Aubrey perceived Plaintiff as "not in his right mind," when Plaintiff was simply trying to report the student-on-student

sexual assault/sexual harassment and see that appropriate action was taken.

74. Academy also took adverse employment action against Plaintiff when Aubrey attempted to use a perceived disability to discredit his truthful and accurate report of student-on-student sexual assault/harassment.

75. Plaintiff was a qualified individual under the ADAAA, i.e., an individual who, with or without reasonable accommodation, could perform the essential functions of the position he held.

76. Academy took adverse employment action against Plaintiff on the basis of his disability, either actual, perceived, or record of.

77. As a direct and proximate result of Defendant's actions and/or failure to act, Plaintiff has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities.

78. Additionally, Plaintiff has suffered and will continue to suffer emotional distress, including physical manifestations such as insomnia and anxiety. Plaintiff is thereby entitled to general and compensatory damages, such amount to be proven at trial, as well as any other equitable remedies available to him.

## COUNT V
## VIOLATION OF 42 U.S.C. § 1983
## (Retaliation for Free Speech)

79. Plaintiff incorporates herein by reference all the foregoing and following allegations of the Complaint.

80. Plaintiff exercised his First Amendment right to free speech when he (1) reported sexual misconduct by a student toward several female student; (2) when he followed up with Aubrey to see what action had been taken to investigation the report; (3) when he requested

the student follow him to the office, where he again confronted Aubrey about her failure to take and action; and (4) when Aubrey followed Plaintiff to his classroom where she continued to badger him about his report and actions.

81. Plaintiff's free speech was protected activity in that he was protecting the equal rights of students.

82. Academy's failure to have a Title IX policy or Title Coordinator also violated federal law, and left Plaintiff using his best judgment as to the appropriate steps to take.

83. Aubrey acted under color of state law and in the capacity of principal while Lovstedt was absent.

84. Aubrey misrepresented the report and conversations with Plaintiff in order to hide her own failure to act as legally required.

85. Defendants retaliated against Plaintiff as a result of his protected activity by terminating his employment.

86. Plaintiff's free speech or protected activity was a substantial or motivating factor in Defendants' actions.

87. As a direct and proximate result of Defendants' actions and/or failure to act, Plaintiff suffered and will continue to suffer emotional distress.

88. As a direct and proximate result of Defendants' actions and/or failure to act, Plaintiff has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Plaintiff is entitled to general and compensatory damages in an amount to be proven at trial, as well as any other equitable remedies available to him.

89.  Defendant Aubrey's conduct was willful or done with reckless disregard for Plaintiff's federally protected rights, for which Plaintiff is entitled to punitive damages pursuant to 42

U.S.C. § 1981a(a).

## **DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury as to all issues triable to a jury in this action.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff seeks judgment against Defendants as follows:

1.  For compensatory and general damages in an amount to be proven at trial, and any available equitable remedies.

2.  For punitive damages in an amount to be proven at trial;

3.  For attorney's fees pursuant to statute and costs of suit;

4.  For prejudgment interest on all amounts claimed; and

5.  For such other and further relief as the Court deems just and proper.

Dated this 22nd day of May 2024.

/s/
_____
Shawnee Perdue
CASPERSON ULRICH DUSTIN PLLC